```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOSEPH MAZZEI, on behalf of himself
and all others similarly situated,

                    Plaintiff,
                                              01 Civ. 5694 (JES)
         - against -
                                              MEMORANDUM OPINION
                                                  AND ORDER
THE MONEY STORE and TMS MORTGAGE, INC.,

                    Defendants.
----------------------------------------X
```

**SPRIZZO, D.J.:**

Plaintiff Joseph Mazzei (hereinafter "Mazzei" or "plaintiff") brought the above-captioned action on behalf of himself and all others similarly situated against defendants The Money Store and TMS Mortgage, Inc.[1] (collectively "The Money Store" or "defendants") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and various pendent state laws in conjunction with defendants' alleged debt collection practices. Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56. By Memorandum Opinion & Order, dated December 1, 2004, the Court concluded that The Money Store is not a debt collector within the meaning of the FDCPA and granted defendants' Motion for Summary Judgment on that claim. See Mazzei

---

[1] TMS Mortgage, Inc. is a subsidiary of The Money Store. See Second Am. Compl. ("Compl.") ¶ 7. The Money Store is now known as HomEq Inc. See Defs.' Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("Defs.' 56.1") ¶ 7.

v. The Money Store, 349 F. Supp. 2d 651, 663 (S.D.N.Y. 2004). At that time, the Court denied defendants' Motion for Summary Judgment with respect to plaintiff's remaining claims without prejudice subject to being renewed upon completion of discovery. See id. At the close of discovery, plaintiff renewed his remaining claims and defendants again moved for summary judgment. Plaintiff responded with a Cross-Motion for Summary Judgment. For the reasons that follow, the Court hereby grants summary judgment in favor of defendants with regard to plaintiff's RESPA claim. The remaining Motions for Summary Judgment are hereby denied without prejudice.

**BACKGROUND**

In November 1994, plaintiff took out a mortgage loan from The Money Store on a property in Sacramento, California. See Compl. ¶ 13. The loan was evidenced by a Note, see Aff. in Supp. of Mot. for Summ. J. of John Dunnery, dated Oct. 12, 2006 ("Dunnery Aff."), Ex. E, and secured with a Deed of Trust, see id., Ex. F, on the property. If plaintiff defaulted under the terms of his Note, then pursuant to the Deed of Trust, "Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property." See id., Ex. F ¶ 7. The deed further indicates that "[a]ny amounts disbursed by Lender . . . shall become additional debt of Borrower . . . ." Id.

In December 1999, plaintiff defaulted on his loan. See Compl. ¶ 20; Defs.' 56.1 ¶¶ 14-15. By letter, dated February 23, 2000 ("Default Notice Letter"), from the law firm Moss, Codilis,

Stawiarski, Morris, Schneider & Prior, LLP, The Money Store advised plaintiff that his loan would be accelerated unless he paid the full amount of the default. See Compl. ¶¶ 21-24; Dunnery Aff., Ex. I. On March 23, 2000, The Money Store accelerated the loan, recording the Notice of Default in the office of the Recorder of Sacramento County, California. See Defs.' 56.1 ¶ 20; Decl. in Opp'n to Defs.' Mot. for Summ. J. of Paul Grobman, dated Nov. 20, 2006 ("Grobman Decl."), Ex. D; Dunnery Aff., Ex. Q.

In July 2000, plaintiff filed for Chapter 13 bankruptcy. See Defs.' 56.1 ¶ 22; Pl.'s Resp. to Defs.' 56.1 Statement ("Pl.'s 56.1 Resp.") ¶ 22; Dunnery Aff., Ex. S. As a result, The Money Store allowed plaintiff to resume periodic payments on his loan and avoid a foreclosure. See Defs.' 56.1 ¶ 23; Pl.'s 56.1 Resp. ¶ 23; Defs.' Mem. in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Defs.' Opp'n") at 1-2. On October 2, 2000, The Money Store provided plaintiff with a Payoff Statement showing the amount needed to pay off his loan. See Dunnery Aff., Ex. T. The balance included an unpaid principal balance of $61,147.32, as well as a "Corporate Advance Balance" of $798.80, which The Money Store had purportedly incurred, and "Attorney Outsourcing Fees" of $1,455.01. Id. With the threat of foreclosure looming, on October 17, 2000 plaintiff sold his house and used the proceeds to pay in full the then-posted balance on his loan. See Compl. ¶ 30; Pl.'s Rule 56.1 Statement in Supp. of Cross-Mot. for Summ. J. ("Pl.'s 56.1") ¶ 7; Defs.' Resp. to Pl.'s Rule 56.1 Statement in Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Defs.'

3

56.1 Resp.") ¶ 7. By letter, dated October 24, 2000, The Money Store advised plaintiff that he had paid off his loan in full, and that he was owed a refund of $188.51, which The Money Store paid on November 15, 2000. See Grobman Decl., Ex. G; Dunnery Aff., Ex. G at 2.

Three months after plaintiff paid off his loan, he wrote a letter to defendants, dated January 16, 2001, in which he requested certain information. See Dunnery Aff., Ex. K. The pertinent portions of plaintiff's letter read as follows:

> Dear Sirs:
> In connection with the above-referenced loan, under which I was the borrower, I request the following information from The Money Store:
> 1. A copy of any documents distributed to or signed by me relating to the Automatic Payment Plan . . . .
> 2. An explaination [sic] for the $15.00 NSF charge on the October 2, 2000 payoff statement. (My original note limits such fees to $10.00);
> 3. An explaination [sic] of your right to collect (and itemized breakdown of) "the expenses of colletion [sic] and attorney's fees and cost" referred to in the February 23, 2000 letter providing me with formal notice of default;
> 4. An explaination [sic] of your right to collect (and an itemized breakdown of the "Attorney Outsourcing Fees" and "Unpaid Other Fees" referred to in the October 2, 2000 Payoff Letter . . . .

Id. By letter dated February 2, 2001, The Money Store acknowledged plaintiff's "recent inquiry." Id., Ex. L.

In a follow-up letter dated February 27, 2001, The Money Store provided plaintiff with another more detailed response, which largely addressed plaintiff's earlier requests:

Dear Mr. Mazzei:

Thank you for your recent inquiry . . . . Please refer to the enclosed copy of your correspondence regarding the information provided below:

1. Per your request, enclosed is a copy of your signed agreement with The Money Store relating to the Automatic Payment Plan (APP).

2. The returned-draft fee to which your correspondence refers originated with your APP payment dated September 6, 1999, in the amount of $535.16. Please note, having reviewed your signed Note, we concur that the returned-draft fee should have been assessed at $10.00. Consequently your overpayment of $5.00 will be refunded to you. Please allow 7-10 business days to receive it.

3. Having completed the research associated with your inquiry, we have confirmed that the Corporate Advances on your loan, in the amount of $2,458.07, are valid. The following is a summary of the items paid on your behalf due to the status of your loan.

- 4 Breach/Notice of Default Letters
  (3/98,5/98,11/98,2/00)           $140.00
- 3 Broker Price Opinions
  (12/98,2/00,6/00)                $300.00
- 5 Property Inspections
  (10/99,1/00,3/00,5/00,6/00)      $42.50
- Delinquent Property Taxes 1999-2000
  (3/00)                           $416.30
- Bankruptcy Attorney/Court Costs
  (7/00,10/00,11/00)               $260.00
- Foreclosure Attorney/Court Costs
  (12/00)                          $1,299.27

To date, a total of $2,418.81 has been paid toward Corporate Advances. The remaining balance of $39.26 has been written-off as uncollectible.

Regarding the right of The Money Store to assess, and collect Corporate Advances, we refer you to section 4, paragraph D, of your signed Note entitled Payment of Note Holder's Costs and Expenses.

4. The "other fees" listed on your Payoff Statement originated with the following:

- Demand Fee (10/00)               $50.00
- Loan Cancellation Fee (10/00)    $55.00

Please note, <u>Section 2943</u> of the <u>Civil Code of California</u> provides for the assessment of demand fees associated with the cost of furnishing a statement of obligation or Payoff Statement. Additionally, it provides for the assessment of recording and cancellation fees associated

5

> with the processing of lien release documents at a loan's payoff.
> Mr. Mazzei, we trust this addresses your concerns. Should you have any questions, please contact our Customer Service Department at (877)867-7378 . . . .

Id., Ex. M. Plaintiff contends that The Money Store violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to his January 16, 2001 inquiry letter timely and properly. See Compl. ¶¶ 48-50. The Money Store argues that it was not obligated to respond to plaintiff's January 16, 2001 inquiry letter, but nevertheless, that it complied with the statute. See Defs.' Mem. at 14-16.

## DISCUSSION

### A. Standard of Review

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. See Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must then come forward with specific facts showing that there is a genuine issue of material fact. See Fed. R. Civ. P. 56(e). In doing so the nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible," Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If no genuine issue as to any material fact exists, the Court may grant summary judgment as a matter of law. See Celotex, 477 U.S. at 323.

**B. RESPA Claim**

Plaintiff contends that The Money Store violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to his January 16, 2001 inquiry letter timely and properly. See Compl. ¶¶ 48-50. Section 2605(e) requires a covered mortgagor in receipt of a "qualified written request"[2] from its borrower for information on the servicing of its loan to send "a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." See 12 U.S.C. § 2605(e)(1)(A). Additionally, within sixty days of receiving the borrower's request, the mortgager must do one of three things:

(A) make appropriate corrections in the account of the borrower . . . ;
(B) after conducting an investigation, provide the

---

[2] A "qualified written request" is

> a written correspondence . . . that-(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

See 12 U.S.C. § 2605(e)(1)(B).

7

>                    borrower with a written explanation or clarification
>                    that includes--
>                         (i)  to the extent applicable, a statement of
>                              the reasons for which the servicer believes
>                              the account of the borrower is correct as
>                              determined by the servicer; and
>                         (ii) the name and telephone number of an
>                              individual employed by, or the officer or
>                              department of, the servicer who can provide
>                              assistance to the borrower; or
>               (C)  after conducting an investigation, provide the
>                    borrower with a written explanation or clarification
>                    that includes--
>                         (i)  information requested by the borrower or
>                              an explanation of why the information
>                              requested is unavailable or cannot be
>                              obtained by the servicer; and
>                         (ii) the name and telephone number of an
>                              individual employed by, or the office or
>                              department of, the servicer who can provide
>                              assistance to the borrower.

See 12 U.S.C. § 2605(e)(2).

In his January 16, 2001 inquiry letter, plaintiff requested a "copy of any documents distributed to or signed by [plaintiff] relating to the Automatic Payment Plan," an "explaination [sic] for the $15.00 NSF charge on the October 2, 2000 payoff statement," and an explanation of The Money Store's right to collect and itemized breakdown of "the expenses of colletion [sic] and attorney's fees and cost" referred to in the Default Notice Letter as well as the "Attorney Outsourcing Fees" and "Unpaid Other Fees" referred to in the Payoff Statement. See Dunnery Aff., Ex. K. By letter dated February 2, 2001, seventeen days after the date of plaintiff's letter, The Money Store acknowledged plaintiff's "recent inquiry," see id., Ex. L, and then responded more fully to plaintiff's

8

inquiry twenty-five days later by follow-up letter dated February 27, 2001. See id., Ex. M.

Plaintiff contends that The Money Store violated RESPA, 12 U.S.C. § 2605(e), by failing to respond to his January 16, 2001 inquiry letter timely and properly. See Compl. ¶¶ 48-50. The Money Store argues that it was not obligated to respond to plaintiff's January 16, 2001 inquiry letter because it was not a "qualified written request." See Defs.' Mem. at 15. Nevertheless, The Money Store argues that it complied with the statute. Id.

The Court need not determine whether plaintiff's January 16, 2001 inquiry letter was a qualified written request, since the Court finds that defendants did not violate RESPA even assuming it was such a request. First, defendants' February 2, 2001 letter clearly fulfilled defendants' obligation under RESPA § 2605(e)(1)(A) to acknowledge receipt of plaintiff's letter within twenty days. See Dunnery Aff., Ex. L (Feb. 2, 2001 letter from The Money Store's Account Services Department to Joseph Mazzei thanking Mr. Mazzei for his recent inquiry). Second, defendants' February 27, 2001 letter clearly fulfilled defendants' obligation under RESPA § 2605(e)(2). The letter clearly provided the "reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," the "information requested by the borrower," and the telephone number of the Customer Service Department which could provide further assistance within sixty

9

days. See id., Ex. M.

More specifically, in response to plaintiff's first request, the letter included a copy of plaintiff's signed agreement with The Money Store relating to the Automatic Payment Plan. In response to plaintiff's second request, the letter stated that The Money Store would refund the $5.00 overcharge on plaintiff's returned check fee, which it credited to plaintiff's account the following day. See id., Exs. M, G at 2, N at 1. In response to plaintiff's third and fourth requests, the letter clearly provided a reference to the Note entitled Payment of Note Holder's Costs and Expenses which gives The Money Store the right to assess and collect "all of its costs and expenses" (including attorneys fees and costs), an itemized breakdown of the items paid on plaintiff's behalf due to the status of his loan, a breakdown of the "other fees" listed on plaintiff's Payoff Statement, and an explanation of The Money Store's right to collect those fees. As this Court finds no genuine issue of material fact that The Money Store complied with RESPA based on these two letters, the Court grants summary judgment in favor of defendants with respect to plaintiff's RESPA claim.

## CONCLUSION

For the aforementioned reasons, this Court grants summary judgment in favor of defendants with regard to plaintiff's RESPA claim. The remaining Motions for Summary Judgment are hereby denied without prejudice. A Pre-Trial Conference in this action

shall occur on May 13, 2008 at 3:00 p.m. in Courtroom 14C, 500 Pearl Street.

**It is SO ORDERED.**

**DATED:**   New York, New York
   April, 23   2008

*[signature: John E. Sprizzo]*
John. E. Sprizzo
United States District Judge

**APPEARANCES**

THE LAW OFFICES OF MARK S. KAUFMAN
ATTORNEY FOR PLAINTIFF
360 LEXINGTON AVENUE, SUITE 1600
NEW YORK, NY   10017

    MARK S. KAUFMAN, ESQ.

        OF COUNSEL


THE LAW OFFICES OF PAUL GROBMAN
ATTORNEY FOR PLAINTIFF
555 FIFTH AVENUE, 17th FLOOR
NEW YORK, NY   10017

    PAUL GROBMAN, ESQ.

        OF COUNSEL


THE LAW OFFICES OF CURTIS V. TRINKO, P.C.
ATTORNEY FOR PLAINTIFF
16 WEST 46TH STREET, 7TH FLOOR
NEW YORK, NY   10036

    CURTIS V. TRINKO, ESQ.

        OF COUNSEL


POLLACK & KAMINSKY
ATTORNEYS FOR DEFENDANTS
114 WEST 47TH STREET
NEW YORK, NY   10036

    MARTIN I. KAMINSKY, ESQ.
    W. HANS KOBELT, ESQ.

        OF COUNSEL