```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------

**JOSEPH MAZZEI on behalf of himself
and all others similarly situated,**

                  **Plaintiff,**

        **- against -**

**THE MONEY STORE, ET AL.,**

                  **Defendants.**

------------------------------------

**01 Civ. 5694 (JGK)**

**MEMORANDUM OPINION
AND ORDER**

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Joseph Mazzei, brings this purported class action on behalf of himself and all others similarly situated against The Money Store, TMS Mortgage, Inc., and HomEq Servicing Corporation (collectively "the defendants").

    The plaintiff alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d, TILA Regulation Z, 12 C.F.R. § 226.21, and California Business & Professional Code § 17200 et seq. (West 2011) in connection with the defendants' allegedly improper debt collection practices.  The defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the plaintiff's claim under TILA, which is the sole remaining federal claim in this action.[1]

---

[1] The plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 were dismissed by this Court prior to this motion by rulings of Judge Sprizzo.  See Mazzei v. Money Store, 349 F. Supp. 2d 651, 661

I.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Behringer v. Lavelle Sch.

---

(S.D.N.Y. 2005) (dismissing the FDCPA claim); Mazzei v. Money Store, 552 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (dismissing the RESPA claim).

for the Blind, No. 08 Civ. 4899, 2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.

**II.**

The following facts are undisputed unless otherwise noted.

**A.**

The plaintiff, Joseph Mazzei, took out a mortgage loan from The Money Store in 1994 on his home in Sacramento, California. (Defs.' 56.1 Stmt. ¶¶ 4, 10; Pl.'s 56.1 Stmt. ¶¶ 4, 10.)  The

Money Store is a mortgage lender and servicer of loans. (Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. ¶ 5.)  At the time the plaintiff took out the loan, he was an employee of The Money Store. (Defs.' 56.1 Stmt. ¶ 10; Pl.'s 56.1 Stmt. ¶ 10.)

In December 1999, the plaintiff began to experience financial difficulties and fell behind on his loan. (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13.)  The plaintiff was late in his loan payments and defaulted on several occasions.  (Defs.' 56.1 Stmt. ¶ 12; Pl.'s 56.1 Stmt. ¶ 12.)  In June 2000, the Money Store accelerated the plaintiff's loan obligations and declared the full amount of the debt immediately due and payable.  (Defs.' 56.1 Stmt. ¶ 19; Pl.'s 56.1 Stmt. ¶ 19.)  The Money Store also notified the plaintiff of its intent to foreclose on his home.  (Notice of Default and Trustee's Sale under Deed of Trust dated June 24, 2000, attached as Ex. Q to Dunnery Declaration ("Dunnery Decl.").)  At the time of acceleration, the plaintiff's account had a debit balance of over $60,000.  (Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 20.)  The plaintiff filed for bankruptcy in July 2000. (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13.)

Following the plaintiff's bankruptcy filing, The Money Store stopped the foreclosure on the plaintiff's home.  (Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1 Stmt. ¶ 22.)  The plaintiff made several payments to The Money Store after acceleration of the

4

loan. (Defs.' 56.1 Stmt. ¶ 23; Pl.'s 56.1 Stmt. ¶ 23.)  The parties dispute whether these payments had the effect of reinstating the plaintiff's loan.  (Defs.' 56.1 Stmt. ¶¶ 38, 39; Pl.'s 56.1 Stmt. ¶¶ 38, 39.)

**B.**

On October 17, 2000, the plaintiff made a payment of $61,147.32 in an effort to repay his loan in full ("October 2000 repayment").  (Ex. G to Dunnery Decl.; Defs.' 56.1 Stmt. ¶ 24; Pl.'s 56.1 Stmt. ¶ 24.)  The plaintiff received a letter from The Money Store dated October 24, 2000 which advised him that his loan had recently been "paid in full" and that a "payoff overpayment in the amount of $188.51" would be refunded to him shortly.  (Money Store letter to Joseph Mazzei dated October 24, 2000, attached as Ex. A to Grobman Declaration ("Grobman Decl.").)  The defendants contend that this letter was erroneous because it did not reflect additional charges incurred by The Money Store that had not yet been posted to the plaintiff's account at the time of the October 2000 repayment (the "late-posted charges"). (Defs.' 56.1 Stmt. ¶¶ 25, 34; Dep. Tr. of John Dunnery ("Dunnery Dep. Tr."), attached as Ex. C to Dunnery Decl., at 310: 3-25.)  According to the defendants, these charges included costs incurred by The Money Store for real estate broker price opinions, property inspections, payment of delinquent property taxes, preparation of breach letters, late

5

payment fees, attorneys' fees, and various other expenses. (Customer Account Activity Statement for Joseph Mazzei dated September 16, 2002, attached as Ex. G to Dunnery Decl.; Letter from The Money Store to Joseph Mazzei dated February 27, 2001, attached as Ex. M to Dunnery Decl.)  The defendants claim that these charges caused the plaintiff to have an outstanding debit balance of $229.26, even after the October 2000 repayment, which The Money Store then chose to write off.  (Defs.' 56.1 Stmt. ¶ 35; The Money Store's Supplemental Response to Plaintiff's Second Set of Interrogatories, with attached invoices, attached as Ex. R to Dunnery Decl.)  The plaintiff disputes these charges and claims that they could not factually or legally be charged to the plaintiff and that the plaintiff did in fact have a credit balance in his account.

c.

On June 22, 2001, the plaintiff filed his complaint in this Court.  On December 1, 2004, Judge Sprizzo granted summary judgment on the plaintiff's claims under the Fair Debt Collection Practices Act but denied without prejudice the defendants' motion for summary judgment on the plaintiff's claims under TILA and the Real Estate Settlement Procedures Act (RESPA).  On April 25, 2008, Judge Sprizzo granted summary judgment on the plaintiff's claims under RESPA but again denied

6

summary judgment without prejudice on the plaintiff's TILA claim.

### III.

The defendants move for summary judgment dismissing the plaintiff's claim under § 1666d of TILA on the grounds that the creditor's obligation under this provision only arises when "a credit balance in excess of $1 is created in connection with a consumer credit transaction . . . ." 15 U.S.C. § 1666d.  The defendants claim that the plaintiff never had a credit balance and that they therefore bear no obligations under this provision of TILA.

The Official Staff Commentary to Regulation Z of TILA states that

> [a] credit balance arises whenever the creditor receives or holds funds in an account in excess of the total balance due from the consumer on that account.  A balance might result, for example, from the debtor's paying off a loan by transmitting funds in excess of the total balance owed on the account . . . .

12 C.F.R. pt. 226, supp. I at ¶ 21(a)(1) (2000).  The Commentary goes on to clarify that "[t]he phrase total balance due refers to the total outstanding balance" and "does not apply where the consumer has simply paid an amount in excess of the payment due for a given period."  Id. at ¶ 21(a)(2) (emphasis omitted).

The parties agree that, prior to and at the time of the acceleration of the plaintiff's loan, the plaintiff's account

7

had a debit balance in excess of $60,000.  (Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Stmt. ¶ 20.)  They also agree that the plaintiff made a payment of $61,147.32 on October 17, 2000 in an effort to repay his loan.  (Ex. G to Dunnery Decl.; Defs.' 56.1 Stmt. ¶ 24; Pl.'s 56.1 Stmt. ¶ 24.)  However, the parties dispute whether this payment gave rise to a credit balance.  The defendants argue that the plaintiff retained a debit balance because the plaintiff incurred additional charges prior to the October 2000 repayment that had not yet been posted to his account at the time of the repayment.  (Defs.' 56.1 Stmt. ¶¶ 25, 34.)  Thus, according to the defendants, even after repayment, the plaintiff had an outstanding debit balance of $229.26, which they then chose to write off.  (Defs.' 56.1 Stmt. ¶ 35; Ex. R to Dunnery Decl.)  The plaintiff argues that these charges were improper and that the October 2000 repayment instead resulted in a credit balance of $188.51, which the defendants have failed to refund to the plaintiff.  (Ex. A to Grobman Decl.)  Because both parties agree that the plaintiff paid off all loan obligations other than those which posted to his account after the October 2000 repayment, the question of whether the plaintiff had a credit balance turns on whether the late-posted charges were proper.

**A.**

The defendants have not met their burden of proving that no genuine issues of material fact exist as to the propriety of the late-posted charges assessed by the defendants.[2] For example, with respect to the propriety of the post-acceleration late fees, disputed issues of fact remain as to whether the plaintiff's payments after acceleration were accepted by the defendants and whether his loan was reinstated. The defendants argue that the loan was reinstated when the plaintiff began to make payments following bankruptcy, thus rendering post-acceleration charges permissible according to the terms of the plaintiff's loan documents. (Defs.' 56.1 Stmt. ¶ 38.) The plaintiff contends that his post-acceleration payments did not result in reinstatement of the loan and that several of these payments were in fact rejected by the defendants. (Pl.'s 56.1 Stmt. ¶ 39.) He points to a letter from The Money Store dated October 24, 2000, which states that two checks sent by him in

---

[2] The plaintiff argues as an initial matter that the documents on which the defendants rely to prove that the plaintiff had a debit balance, namely the Account Activity Statement (Ex. G to Dunnery Decl.) and the invoices from Fidelity (Ex. R to Dunnery Decl.), are hearsay. It is unnecessary to reach this question, because, as discussed above, even with the benefit of these documents, the defendants have not met their burden of showing that no genuine issue of material fact exists as to whether there was a credit balance in the plaintiff's account. It should be noted, however, that Judge Sprizzo previously described the Customer Account Activity Statement as "undecipherable." Mazzei, 349 F. Supp. 2d at 662 n. 7.

9

May and June of 2000 "were appropriately returned to you because your loan was delinquent for the December 1999 through May 2000 payments at that time and was in active foreclosure" and because they "were insufficient to reinstate your loan and were not submitted in accordance with any repayment plan approved by The Money Store." (Ex. A to Grobman Decl.) Whether payments were made and accepted that effectuated a reinstatement of the plaintiff's loan is an issue of material fact that must await trial.

The plaintiff also contends that The Money Store never incurred some of the expenses for which he was charged, thus making it improper for The Money Store to seek reimbursement from him. (Pl.'s 56.1 Stmt. ¶¶ 49, 50.) In particular, he argues that invoices from Fidelity submitted by The Money Store do not indicate that The Money Store actually paid Fidelity for costs associated with posting a notice of sale concerning the impending foreclosure on the plaintiff's home. (Pl.'s 56.1 Stmt. ¶¶ 49, 50.) Whether The Money Store actually made these payments to Fidelity is a disputed issue of fact that cannot be resolved on this motion for summary judgment.

In addition, the defendants concede that some of the late-posted charges were improper, such as a $5 overcharge for a returned check and a $50 charge for an outsource management fee. (Defs.' 56.1 Stmt. ¶¶ 36, 40-41). However, the defendants

10

assert that the charges were either credited to the plaintiff's account or were inconsequential because they were not enough to offset the debit balance in the plaintiff's account. (Defs.' 56.1 Stmt. ¶¶ 37, 42.) The plaintiff disputes that such charges were ever credited or that they were inconsequential in amount. (Pl.'s 56.1 Stmt. ¶¶ 37, 42.) Whether these concededly improper charges were ever credited to the plaintiff's account and whether they were sufficient to give rise to a credit balance are among the many questions of fact concerning the propriety of the late-posted charges that preclude the entry of summary judgment.[3]

**B.**

The defendants seek to circumvent these disputed facts by relying on a statement by the plaintiff at his deposition allegedly indicating that he never had a credit balance in his account. At the deposition, the plaintiff was asked whether he was "aware of [his] account at any time having a credit balance" and answered "No I'm not." (Dep. Tr. of Joseph Mazzei, attached as Ex. D to Dunnery Decl., at 191: 17-23.) The defendants' contention that this statement is dispositive for purposes of

---

[3] Indeed, Judge Sprizzo, in denying without prejudice a previous motion for summary judgment by the defendants on these same grounds, found that the question of whether the defendants had ever credited the plaintiff's account for the overcharge on the returned check fee was a disputed factual issue that rendered the summary judgment motion premature. Mazzei, 349 F. Supp. 2d at 662.

11

the summary judgment motion is unavailing.  First, the statement is more ambiguous than the defendants suggest.  It is unclear whether the plaintiff's statement describes the status of his account only before the loan was accelerated or instead at all times even after the October 2000 repayment.  If the former, then the plaintiff's statement has no bearing on the question of whether the October 2000 repayment gave rise to a credit balance.  Second, even if the plaintiff's statement were unambiguous, it would not be dispositive.  Instead, the statement merely constitutes one piece of evidence, like any other, which it is the province of the fact-finder to weigh.  Indeed, the record contains similar admissions by the defendants from which a jury could reasonably conclude that the plaintiff did have a credit balance.  For example, following the October 2000 repayment, The Money Store sent a letter to the plaintiff advising him that his loan was "paid in full" and that he made an "overpayment in the amount of $188.51" which would be "refunded to [him] shortly."  (Ex. A to Grobman Decl.)  It is for the jury, not the Court, to weigh these conflicting pieces of evidence.  See, e.g., McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (weighing of evidence is the province of the jury).

   Because there are numerous disputed issues of fact as to whether there was ever a credit balance in the plaintiff's

12

account, the defendants' motion for summary judgment is **denied** on the plaintiff's TILA claim.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, The Money Store Defendants' Motion for Summary Judgment is **denied.** The Clerk is directed to close Docket No. 135.

**SO ORDERED.**

Dated:    New York, New York
          September 28, 2011

                                             _____
                                             John G. Koeltl
                                             United States District Judge