UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH MAZZEI, et al.,

                           Plaintiffs,

            - against -

THE MONEY STORE, et al.,

                           Defendants.

OPINION
AND ORDER

01cv5694 (JGK) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

Plaintiff Joseph Mazzei brings this class action on behalf of himself and all those similarly situated against The Money Store, TMS Mortgage, Inc., and HomEq Servicing Corporation. Mazzei alleges breach of contract amd violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666(d), TILA Regulation Z, 12 C.F.R. § 226.21, and California Business & Professional Code § 17200 et seq. (West 2011), in connection with Defendants' allegedly improper debt collection practices. (Docket No. 131.) The Court had previously dismissed Mazzei's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), (Docket No. 30), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), (Docket No. 74).

The Court certified the following classes pursuant to Federal Rule of Civil Procedure 23(c)(1)(B): "All similarly situated borrowers who signed form loan mortgage agreements on loans which were owned or serviced by the defendants and who from March 1, 2000 to the present ("Class Period") were charged: (A) late fees after the borrower's loan was accelerated, and where the accelerated loan was paid off ("Post-Acceleration Late Fee Class"), and/or (B) amounts paid to Fidelity, a non-lawyer entity, from attorneys' fees charged to borrowers ("Fee

Split Class").'' (Docket No. 187.)

Before the Court is Mazzei's request that Defendants be sanctioned for violating the duty

to preserve information relating to foreclosure and bankruptcy services provided to Defendants

by Fidelity National Foreclosure Solutions ("Fidelity") through an electronic database created by

Fidelity, "the New Invoice System." (Pl. Letter to the Court, Nov. 25, 2013 at 7.)  Mazzei

claims that the information has been lost from the New Invoice System and is now in the

possession of a third party, Lender Processing Services ("LPS"), and will be costly for Mazzei to

retrieve. (Pl. Letter to the Court, Oct. 17, 2013 at 3.)  Accordingly, Mazzei asks the Court to

direct Defendants to obtain the information from LPS, as a sanction for their failure to preserve

the information in its original format. (Pl. Letter to the Court, Nov. 25, 2013 at 7.)   For the

following reasons, Mazzei's request is **GRANTED.**  Defendants are ordered to 1) bear the cost

of determining whether the New Invoice System data currently in the possession of LPS is

searchable; 2) pay Mazzei his attorneys' fees for this application.  Mazzei is ordered to submit an

affidavit detailing reasonable hours and rates associated with its application by **August 1, 2014.**

## I. BACKGROUND

Mazzei alleges that Defendants entered into a Master Service Agreement ("MSA") with

Fidelity in 2000, under which Defendants would send foreclosure and bankruptcy matters

involving borrowers to Fidelity and Fidelity would refer those matters to law firms Fidelity

retained for that purpose. (Pl. Letter to the Court, Nov. 25, 2013 at 3.)  In return, Fidelity was

paid a portion of the attorneys' fees charged to borrowers. (*Id.*)  Defendants tracked the

invoicing and payment of the fees through "the New Invoice System," "an electronic billing

system created by Fidelity . . . ." (Pl. Letter to the Court, Oct. 17, 2013 at 1.)  In 2006,

Defendant The Money Store, Inc. sold the assets of Defendant HomEq Servicing Corporation, its

2

wholly owned subsidiary, to Barclays. (Def. Letter to the Court, Nov. 25, 2013 at 1.) Those assets included the New Invoice System. (*Id.*)

Mazzei asserts that Defendants have violated their duty to preserve information in the New Invoice System relating to foreclosure and bankruptcy services provided by Fidelity, including, but not limited to, information concerning fees received by Fidelity and its network of retained law firms (hereinafter, "the fee-related information"). Mazzei sought the fee-related information in discovery. Mazzei's counsel claims that, on February 28, 2013, Defendants' counsel informed him that the fee-related data the New Invoice System had been lost. (Pl. Letter to the Court, Oct. 17, 2013 at 1.)

Lender Processing Services ("LPS") now performs the foreclosure and bankruptcy outsourcing services for Defendants previously performed by Fidelity. ((Pl. Letter to the Court, Oct. 17, 2013 at 3.) LPS informed Mazzei that it has information from the New Invoice System in an electronic format, but that the information is not "readable," (*id.*), that it will cost "a minimum of $10,000 to determine if the [] information is searchable," and that costs will be incurred in extracting and converting the information into a readable format. (*Id.*) LPS has informed Mazzei that it will charge $85 per hour to extract and convert the information. (*Id.*)

## II. DISCUSSION

### A.    The Duty to Preserve

The duty to preserve evidence arises when "the party has notice that the evidence is relevant to litigation–most commonly when suit has already been filed . . . ." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). "A party or anticipated party must retain all relevant documents . . . in existence at the time the duty to preserve attaches, and any relevant documents created thereafter." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). The

3

scope of the duty extends to "any documents or tangible things (as defined by Rule 34(a)) made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.'" *Id.* (quoting Fed. R.cvP. 26(a)(1)(A)).

A party may be sanctioned for violating the duty to preserve if the moving party shows "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that reasonable trier of fact could find that it would support that claim or defense." *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001). *See also GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 352-53 (S.D.N.Y. 2012), *aff'd*, No. 11cv1299 (HB), 2012 WL 1849101 (S.D.N.Y. May 21, 2012). Spoliation includes both the destruction and the "significant alteration of evidence." *W. v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). *See also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006) ("[P]ermitting the downgrading of data to a less accessible form–which systematically hinders future discovery by making the recovery of the information more costly and burdensome–is a violation of the preservation obligation."). Sanctions should not be imposed, however, without a showing that the movant has suffered prejudice. *Id.* at 353.

**B.     Appropriateness of Sanctions in This Case**

    **1.     Defendants had a duty to preserve fee-related information in the New Invoice System.**

    ***Defendants had the right and duty to obtain the information.***

Mazzei maintains that Defendants were on notice of the duty to preserve as of the date of the Complaint, June 22, 2001, and at least as of the date of the Second Amended Complaint,

August 2, 2002, which specifically alleged that Defendants "charg[ed] attorneys' and other fees for tasks for which it had no right to be compensated," (Sec. Am. Compl. ¶¶ 34, 44), and levied charges "in excess of amounts allowed to be recovered" (*Id.* ¶ 2). (Pl. Letter to the Court, Nov. 25, 2013 at 2.) Mazzei argues that Defendants had an obligation to preserve relevant information in the New Invoice System because they had the legal right and practical ability to obtain the data from Fidelity, and had actual physical possession of the data during a portion of the class period. (Pl. Letter to the Court, Nov. 25, 2013 at 2.) Defendants contend that they had no obligation to preserve the information Mazzei seeks because it was never under their "possession, custody or control." (Def. Letter to the Court, Nov. 25, 2013 at 2.)

A party has control over evidence when it has "the right, authority, or practical ability to obtain the documents from a non-party to the action." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02cv7377 (LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007). *See also SEC v. Strauss*, No. 09cv4150 (RMB)(HBP), 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) ("[A] party has control over material that it has the practical ability to obtain . . . [and] material that it has a legal right to obtain.") Legal ownership or actual physical possession are not necessary for control. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D., at 195. *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006) ("The concept of 'control' has been construed broadly."). A party is in control of any documents in the possession of a third party if that third party is contractually obligated to make them available. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195.

The fee-related information in the New Invoice System has been destroyed in that it may no longer be accessible at all, and if it is accessible, will only be accessible at great cost. *See* Pl. Letter to the Court, Oct. 17, 2013 at 3 ("LPS also states that it does not know 'whether the

5

information can be extracted in an automated fashion in bulk and converted to a readable

format.'"); *W. v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Defendants

had both the legal right and practical ability to obtain the information relating to fees in the New

Invoice System after the initiation of this action.  *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195.

Defendants had a contract with Fidelity, the Master Services Agreement, which stated that

billing invoices submitted to Defendants by Fidelity through the New Invoice System must

"specifically identify the fees and costs for which payment or reimbursement is sought." (Pl.

Letter to the Court, Nov. 25, 2013, Ex. A at 7, 19.)  Because the Master Services Agreement

gave Defendants a contractual right to demand the information specifically identifying the fees

being charged, Defendants were in control of that information.  *In re NTL, Inc. Sec. Litig.*, 244

F.R.D. at 195. *See also GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355

(S.D.N.Y. 2012), *aff'd* No. 11cv1299 (HB), 2012 WL 1849101 (S.D.N.Y. May 21, 2012)

(finding a party had a practical ability to obtain information from a third party consulting firm

when "there seems to be little doubt that [the third party] would have complied with a timely

request . . . to preserve its information"); *S.E.C. v. Strauss*, No. 09cv4150 (RMB) (HBP), 2009

WL 3459204 (S.D.N.Y. Oct. 28, 2009) ("[A]n agreement with a third-party possessor granting a

party access to documents, along with an actual mechanism for getting the documents, gives that

party the 'practical ability to obtain' the documents and so is sufficient to establish that party's

control.").

### The 2003 Amendments to the MSA gave Defendants the practical ability to obtain the information.

As an alternate basis for finding that Defendants were in control of the fee-related

information in the New Invoice System, Mazzei notes that a 2003 Amendment to the Master

6

Services Agreement gave Defendants the right to request any "nonpublic personal information" collected by Fidelity and a right to have the information returned to them upon termination of the Agreement. (Pl. Letter to the Court Nov. 25, 2013, Ex. E at 1.) The fact that a third party agrees to treat its work related to services provided to a party as confidential does not establish any legal rights, *GenOn Mid-Atl., LLC*, 282 F.R.D., at 355, but it does relate to the issue of practical ability to obtain the information because it demonstrates a likelihood that Fidelity would have complied with a timely request by Defendants to preserve its information. *Id.* Mazzei further relies on the fact that the 2003 Amendment also gave Defendants the right to perform "information security reviews on any systems, applications, networks, sites or other methods of handling information" used by Fidelity and the right to audit Fidelity's records. (Pl. Letter to the Court Nov. 25, 2013, Ex. E at 2). For the same reasons discussed above, this does not show that Defendants had a legal right to the information audited, but it does help establish that they had a practical ability to obtain the information.

### *Fidelity's agreement to indemnify Defendants gave Defendants the practical ability to obtain the information.*

Mazzei also argues that Defendants controlled the information in the New Invoice System because Fidelity agreed in the Master Services Agreement to indemnify Defendants from any "claims and actions and all expenses incidental to such claims or actions . . . arising out of [its] Services" and because Fidelity and Defendants agreed to "cooperate with each other in all material respects relating to the performance of [the MSA]," (Pl. Letter to the Court, Nov. 25, 2013, at 6), citing *Moore v. Firstsource Advantage, LLC*, No. 07cv770, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011). The Court finds that this clause is further evidence of Defendants' practical ability to obtain the information in Fidelity's possession, and the likelihood that

Fidelity would have complied with a timely request to preserve information.

### *Fidelity was not an agent of Defendants.*

As an alternate basis for demonstrating that Defendants had control of the information in the New Invoice System, Mazzei argues that Fidelity was the agent of the Defendants. Although the Court ultimately finds that Defendants had control of the information, this argument is without merit. A principal is deemed in control of the documents held by its agents. *See GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 354 (S.D.N.Y. 2012), *aff'd*, No. 11cv1299 (HB), 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (a party has a duty to preserve files in possession of its agent) (citing *Trigon Insurance Company v. United States*, 204 F.R.D. 277, 289 (E.D. Va. 2001)). In arguing that Fidelity was an agent of Defendants, Mazzei relies on Network Agreements Fidelity formed with the law firms it contracted with to represent Defendants. The Network Agreements stated that "Fidelity shall be considered the agent of each service/investor Client," and Mazzei maintains that Defendants are clients for the purposes of the Agreements. (Pl. Letter to the Court, Nov. 25, 2013, Ex. F at 2.) The Master Services Agreement between Fidelity and Defendants, however, contradicts these Network Agreements, stating that "Fidelity's capacity under this Agreement is that of an independent contractor, and not an agent or employee of the Money Store for any purpose including but not limited to, payment of taxes and standards of care and liability." (Pl. Letter to the Court, Nov. 25, 2013, Ex. A at 2.) In determining whether or not Fidelity and Defendants had a principal-agent relationship, their own contract is dispositive. Therefore, Mazzei's argument for control on this basis is without merit.

***The claim that the New Invoice System was proprietary does not change the conclusion that Defendants had the practical ability to obtain the information in it.***

Defendants assert that the fee-related information in the New Invoice System was not under their control because the New Invoice System was a "Fidelity proprietary product," which could only be accessed by Defendants through a web address provided by Fidelity and log on codes granted to the Defendants by Fidelity. (Def. Letter to the Court, Nov. 25, 2013 at 2.) Defendants further assert that "[a]ll software, data fields and data entry" on the New Invoice System was "housed by Fidelity on its systems," the data on the system could not be downloaded by the Defendants, and all the Defendants could do was "access the invoice . . . approve or reject [it], or request further information or a billing modification." (*Id.*) These arguments are meritless. As discussed previously, legal ownership or actual physical possession are not necessary for control. *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02cv7377 (LAK), 2007 WL 1518632 (S.D.N.Y. May 17, 2007). Defendants had a "practical ability to obtain" the information in the New Invoice System because the Master Services Agreement provided them access to the information, *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. at 195, and the log on codes granted to them by Fidelity provided them with an "actual mechanism" for obtaining the information. *S.E.C. v. Strauss*, No. 09cv4150 (RMB) (HBP), 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009).

***Even if Defendants did not possess the information in the New Invoice System, they had the practical ability to obtain it.***

Defendants rely on *Shcherbakovskiy v. Da Capo Al Fine, Ltd.* for the propositions that "a party is not obliged to produce . . . documents that it does not possess or cannot obtain," and that "a party also need not seek such documents from third parties if compulsory process against third parties is available . . . ." 490 F.3d 130, 138 (2d Cir. 2007). This reliance is misplaced. In

*Da Capo*, the court makes clear, "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." *Id.* Here, Defendants had "access and the practical ability to possess" the documents in the New Invoice System.

### *Because the information is less accessible, spoliation is an issue in this case.*

Defendants also contend that there is no spoliation issue because Plaintiffs have not shown that the information in the New Invoice System is less accessible now than prior to the transfer of Defendants' access to the system to Barclays. (Def. Letter to the Court, Nov. 25, 2013 at 5). This argument has no merit. Mazzei asserts, and Defendants do not dispute, that the only remaining trace of the information in the New Invoice System is possessed by Lender Processing Services and is not presently in a readable format. Therefore, the information is less accessible than it was when Defendants had access to it.

### *The information sought from the New Invoice System is properly relevant to class list discovery.*

Defendants additionally assert that Mazzei is not entitled to the information in the New Invoice System because it is merits discovery, not class list discovery, and merits discovery has already concluded. (Def. Letter to the Court, Nov. 25, 2013, at n.2.) Defendants do not support their assertion with any reason why the information sought is merits discovery, not class list discovery. Nevertheless, this argument is misplaced. If Defendants violated their duty to preserve any type of discovery, the Court may impose sanctions.

In summary, Mazzei had the burden of establishing that Defendants had control over the information in the New Invoice System. Given Defendants' practical control over the system and its contents, this burden has been met.

**2.      Defendants acted with a culpable state of mind when they failed to preserve fee-related information in the New Invoice System.**

Mazzei must show that Defendants acted with a culpable state of mind when they failed to preserve the information in the New Invoice System. This requires a showing that Defendants destroyed evidence "knowingly even without intent . . or negligently . . ." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001). *See also Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).

In this case, Defendants had affirmatively represented to the Court that the information in the New Invoice System was being preserved. In 2009, Plaintiffs in this action and Plaintiffs in another action against Defendants, *Vincent, et al. v. The Money Store, et al.*, No. 11cv7685 (JGK)(RLE), had filed a motion to enjoin Defendants from destroying records necessary to identify class members. (*Vincent*, Docket No. 86-87.) In the motion, Plaintiffs made clear that they were seeking to enjoin the destruction of fee-related records either in the possession of Defendants or Fidelity, stating "HomEq has failed to provide any documents showing the *actual* division of purported 'legal fees' in the matters involving the plaintiffs . . . Even if HomEq did not itself have these documents in its possession, it clearly had the ability to direct Fidelity . . . to disclose the actual division of 'legal fees' in these matters." (*Vincent*, Docket No. 87 at 22.) In their response, filed under this docket, Defendants stated that they have "not destroyed documents," and that they have" "long had, a 'litigation hold' directive in place as to these actions." (Docket No. 97 ¶ 3) Defendants further stated that "[a]ll that has happened is that the files for closed-out loans have been moved off of The Money Store's MSP computer system onto another computer database and/or preserved in the 'hard copy' files of The Money Store," and that "all of the records are retained in either the IT Turbo system, the *New Invoice System*, or

11

Oracle, as well as hard copies and imaged loan documents from the loan files themselves." (*Id.*
¶¶ 4, 9) (emphasis added.) Defendants were thus put on notice of the Plaintiffs' intent to seek

fee-related data in the possession of Fidelity, and their response affirms that the data in the New

Invoice System was being retained. Now, Defendants have informed Plaintiffs that the data in

the New Invoice System is lost, (Pl. Letter to the Court, Oct. 17, 2013 at 1), and that they have

been "unable to get any information from Fidelity on what fees, what firms, or anything to date."

(*Id.*) Thus, Defendants have failed to preserve the data after being put on notice that Plaintiffs

intended it to be preserved, and after having affirmed that the data was being preserved.

Therefore, Defendants acted willfully in failing to preserve the data.[1]

Defendants argue that they never "said or implied that the Defendants had access to the

New Invoice System in 2009," but instead, they only stated that they had been "advised by

HomEq that whatever was in the New Invoice System had been preserved." (Def. Letter to the

Court, Nov. 25, 2013 at n.1). This argument has no merit. The issue is not whether Defendants

represented that they had access to the New Invoice System in 2009 but whether they had a legal

right and practical ability to obtain the information in the New Invoice System in 2002, thus

---

[1] The proposed Rule 37(e), would abrogate *Residential Funding Corp.* in that it would not permit sanctions
to be imposed for the negligent destruction of evidence, but would require a court to find that "the party's actions
caused substantial prejudice in the litigation and was willful or in bad faith; or (b) irreparably deprived a party of any
meaningful opportunity to present or defend against the claims in the litigation." *Sekisui Am. Corp. v. Hart*, No.
12cv3479 (SAS)(FM), 2013 WL 2951924, at n.3 (S.D.N.Y. June 10, 2013). The new Rule would also require the
Court to consider all relevant factors in determining whether a party acted willfully or in bad faith including, "(A)
the extent to which the party was on notice that litigation was likely and that the information would be discoverable;
(B) the reasonableness of the party's efforts to preserve the information; (C) whether the party received a request to
preserve the information, whether the request was clear and reasonable, and whether the person who made it and the
party consulted in good faith about the scope of preservation; (D) the proportionality of the preservation efforts to
any anticipated or ongoing litigation; and (E) whether the party timely sought the court's guidance on any
unresolved disputes about preserving discoverable information." COMMITTEE ON RULES OF PRACTICE AND
PROCEDURE OF THE JUDICIAL CONFERENCE OF THE UNITED STATES, PRELIMINARY DRAFT OF PROPOSED
AMENDMENTS TO THE FEDERAL RULES OF BANKRUPTCY AND CIVIL PROCEDURE 316-17 (2013), *available at*
http://www.uscourts.gov/uscourts/rules/preliminary-draft-proposed-amendments.pdf. Defendants' conduct is willful
even considering these factors. Therefore, even if the new Rule were in effect, the Court would reach the same
conclusion as herein.

triggering the duty to preserve.  Defendants do not dispute that Plaintiffs' 2009 motion put them on notice of Plaintiffs' intent to obtain the fee-related information possessed by Fidelity and Plaintiffs' desire to have this data preserved.  Defendants do not dispute that they represented to the Court that the information was being preserved by Fidelity.  The attempt to shift the responsibility and blame to Fidelity is unavailing.  The duty to preserve belongs to Defendants. They had the ability to preserve the information through Fidelity.  They failed in that duty.

### 3.       The fee-related information in the New Invoice System is relevant.

"When a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing information was unfavorable to that party." *Residential Funding Corp.*, 306 F.3d, at 109.  The facts in this case meet that standard, and the Court finds that the documents were relevant.

Defendants argue that the information in the New Invoice System was not, in fact, relevant.  They assert that "[t]he invoices presented to HomEq for review by law or trustee firms through New Invoice did not contain any description, information or amounts regarding any billing arrangement between Fidelity and its attorney/trustee network."  (Def. Letter to the Court, Nov. 25, 2013 at 2.)  Even without the presumption expressed in *Residential Funding*, Defendants cannot prevail on this point.  They do not dispute that the New Invoice System contained information about fees charged to Defendants by law firms that contracted with Fidelity.  Even if the system did not contain any information about the division of fees between Fidelity and the law firms, the amount of fees charged to Defendants by the law firms would still be relevant information under Federal Rule of Civil Procedure 26(b).

Finally, Defendants argue that "[g]oing into Fidelity's New Invoice System is not likely to identify any new class members because our methodology with the servicing database

13

accounts for all borrowers who paid attorneys' fees . . . ." (*Id.* at 5.)  This argument is conclusory, and without merit. Defendants have not demonstrated that their methodology is sufficient.

### 4.    Mazzei was prejudiced by Defendants' failure to preserve fee-related information in the New Invoice System.

Prejudice is presumed when "evidence is willfully destroyed by the spoliating party." *Sekisui American Corp.*, 945 F. Supp. 2d at 509.  "To shift the burden to the innocent party to describe or produce what has been lost as a result of the opposing party's willful or grossly negligent conduct is inappropriate because it incentivizes bad behavior." *Id.*  Because Defendants willfully failed to preserve the information in the New Invoice System, prejudice is presumed.  Therefore, Mazzei has met its burden of demonstrating that Defendants should be sanctioned.

### C.    Appropriateness of the Sanction

Mazzei requests that Defendants be sanctioned by being ordered to obtain all the relevant information formerly in the New Invoice System from Lender Processing Services at their own expense.  When evidence is destroyed, the party who sought the evidence should be compensated for any "discovery necessary to identify alternative sources of information." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991). *See also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 201 (S.D.N.Y. 2007) (awarding attorneys' fees associated with additional discovery plaintiffs were required to pursue because defendants failed to preserve records). *Cf. Chan v. Tripe 8 Palace, Inc.*, 03cv6048 (GEL)(JCF), 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) (finding that an award of costs occurred in connection with a motion for sanctions "serves the remedial purpose of making the opposing party whole for costs incurred as

14

a result of the spoliator's wrongful conduct").

While Defendants have set forth some information on the costs of retaining the information sought, they have fallen short of demonstrating that the cost of production would be overly burdensome.

### III. CONCLUSION

For the foregoing reasons, Mazzei's request that Defendants be sanctioned for violating the duty to preserve information in the New Invoice System is **GRANTED**. Defendants are ordered to 1) bear the cost of determining whether the New Invoice System data currently in the possession of LPS is searchable; 2) pay Mazzei his attorneys' fees for this application. Mazzei is ordered to submit an affidavit detailing reasonable hours and rates associated with its motion by **August 1, 2014.**

**SO ORDERED this 18th day of July 2014**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**