UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH MAZZEI, et al.,

                 Plaintiffs,

                 - against -

THE MONEY STORE, et al.,

                 Defendants.

**OPINION
AND ORDER**

**01cv5694 (JGK) (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiff Joseph Mazzei brought this class action on behalf of himself and all those similarly situated against The Money Store, TMS Mortgage, Inc., and HomEq Servicing Corporation. Mazzei alleged breach of contract and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666(d), TILA Regulation Z, 12 C.F.R. § 226.21, and California Business & Professional Code § 17200 et seq. (West 2011), in connection with Defendants' allegedly improper debt collection practices. (Docket No. 131.) A verdict was entered in this action on December 19, 2014, following a two-week jury trial. (Doc. No. 461)

On July 21, 2014, the Court sanctioned Defendants for violating the duty to preserve information relating to foreclosure and bankruptcy services provided to Defendants by Fidelity National Foreclosure Solutions ("Fidelity") through an electronic database created by Fidelity, "the New Invoice System." (Pl. Letter to the Court, Nov. 25, 2013 at 7.) Mazzei now seeks an order granting fees of $17,977.50 for class counsel Paul Grobman, a solo practitioner, and fees of $20,733 for class counsel H. Rajan Sharma and Neil DeYoung of the firm Sharma & DeYoung, LLP. (Doc. Nos. 279, 286) For the reasons set forth below, Mazzei's application is

**GRANTED** in the total amount of $30,681.

## II.   BACKGROUND

Mazzei alleged that Defendants entered into a Master Service Agreement ("MSA") with Fidelity in 2000, under which Defendants would send foreclosure and bankruptcy matters involving borrowers to Fidelity and Fidelity would refer those matters to law firms Fidelity retained for that purpose. (Pl. Letter to the Court, Nov. 25, 2013 at 3.) In return, Fidelity was paid a portion of the attorneys' fees charged to borrowers. (*Id.*) Defendants tracked the invoicing and payment of the fees through "the New Invoice System," "an electronic billing system created by Fidelity . . . ." (Pl. Letter to the Court, Oct. 17, 2013 at 1.) In 2006, Defendant The Money Store, Inc. sold the assets of Defendant HomEq Servicing Corporation, its wholly owned subsidiary, to Barclays. (Def. Letter to the Court, Nov. 25, 2013 at 1.) Those assets included the New Invoice System. (*Id.*)

In his letter request for sanctions, Mazzei claimed that information had been lost from the New Invoice System and was in the possession of a third party, Lender Processing Services ("LPS"), and would be costly for Mazzei to retrieve. (Pl. Letter to the Court, Oct. 17, 2013 at 3.) Accordingly, Mazzei asked the Court to direct Defendants to obtain the information from LPS, as a sanction for their failure to preserve the information in its original format. (Pl. Letter to the Court, Nov. 25, 2013 at 7.) The Court granted Mazzei's request and ordered Defendants to 1) bear the cost of determining whether the New Invoice System data currently in the possession of LPS is searchable; 2) pay Mazzei his attorneys' fees for this application.

Mazzei submitted affidavits detailing reasonable hours and rates associated with his request for sanctions on July 31, and August 1, 2014. (Doc. Nos. 279, 281.) Defendants filed no objections.

2

## III.     DISCUSSION

### A.     Mazzei's Requested Attorneys' Fees

A Court may impose sanctions against counsel and against a party and counsel pursuant to the Court's inherent authority to manage the cases before it. 28 U.S.C. § 1927 ("§ 1927"); *see Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (holding that a court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve orderly and disposition of cases"). Under § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Defendants' counsel does not challenge KGK's entitlement to attorneys' fees at this stage, but instead focuses on the reasonableness of the request.

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schnectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the

3

experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted). Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons*, 575 F.3d at 174. The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

1. **Mazzei's Counsel's Hourly Rates**

    a. **Paul Grobman, Solo Practitioner**

Grobman requests an award of fees based upon his standard hourly rate of $425. Because an attorney's status as a solo practioner is not grounds for a reduction in the reasonable hourly rate, the Court looks to rates charged by attorneys with comparable years of experience in the New York City market. *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n. 6 (2d Cir. 2006). The Court may further rely on its own knowledge of private firm hourly rates in the community and is not restricted to the hourly rate data submitted into evidence. *Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). Grobman's rate is reasonable in light of his twenty-five years of experience in commercial litigation and thirteen years of experience in class action litigation. (Doc. No. 281) Furthermore, his rate is in line with rates that have been approved and awarded in this District.[1] *See Handschu v. Special Servs. Div.*, No. 71-CV-2203 (CSH), 727 F.

---

[1] *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853(PGG), 2011 WL 1002439, at *5-6 (S.D.N.Y. Mar. 16, 2011) (approving a rate of $761 per hour for partner at Orrick, Herrington & Sutcliffe LLP with 35 years of experience); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs .Ltd.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving a rate of $735 an hour for a partner at Bingham McCutchen LLP with over 30 years of experience).

4

Supp. 2d 239, 246 (S.D.N.Y. 2010) (finding hourly rate of $400 reasonable compensation for five class counsel with approximately thirty years experience). The Court finds that Grobman's hourly rate of $425 is reasonable.

### b.   Neal DeYoung and H Rajan Sharma, Sharma & DeYoung, LLP

DeYoung and Sharma request an award of fees based upon their standard hourly rate of $450. This rate is reasonable in light of DeYoung and Sharma's respective experience as well as their firm's specialization in complex litigation "including intellectual property, commercial and class litigation." (Doc. No. 279)  DeYoung has twenty years of experience and has served as class counsel in multiple large class litigations in federal court over the course of his career. (*Id.*) Sharma has "fifteen years of legal experience in the field of class actions and complex litigation in federal and state courts . . . ranging from securities and antitrust to environmental and products liability actions." (*Id.* at 2.)  Furthermore, this rate is in line with rates that have been approved and awarded in this District. The Court finds that DeYoung and Sharma's hourly rate of $450 is reasonable.

### 2. Hours Expended by Mazzei's Counsel

Mazzei's counsel requests an award of fees based on records indicating that a total of 87.58 hours of attorney time were spent in furtherance of the request for sanctions. Grobman billed 42.3 of these hours, DeYoung billed 20.6, and Sharma billed 24.68. (Doc. No. 279-1)

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). If the court determines that the number of hours expended is excessive, redundant, or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in

5

an across-the-board percentage deduction. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997)(citation omitted). In calculating the numbers of reasonable hours, the court looks to "its own familiarity with the case and its experience with the case as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

Mazzei's counsel worked on researching the nature and consequences of Defendants' failure to preserve information over the course of one and a half months: from mid-October to late November. (Doc. Nos. 279-1, 281-1) Mazzei's recoverable legal expenses include the reasonable actions taken by Mazzei in addressing Defendants' bad faith "conduct," not simply the expenses related to making a request for sanctions. *See Walker v. Smith, 277 F. Supp. 2d 297, 301* (S.D.N.Y. 2003) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50 (1991)); *In re Spectee Group Inc.*, 185 B.r. 146, 160, 162 (Bankr. S.D.N.Y. 1995) (ruling that attorneys' fees incurred attributable to investigating, researching and fighting" the sanctionable conduct may be awarded under 28 U.S.C. §1927 and the court's inherent powers). Thus, the temporal scope of Mazzei's fee application will not be limited to the briefing of its motion for sanctions but will include all work reasonably performed in opposition to Defendants' failure to preserve information.

The question remains, however, whether the hours devoted by Mazzei's counsel over this time period were reasonable. A careful review of counsel's billing records indicates that the hours Mazzei's counsel expended in opposition to Defendants' failure to preserve information were excessive. This fee application stems from a fairly simple discovery dispute concerning the spoliation of fee-related information in a database. Although Mazzei drafted multiple letters and participated in multiple telephone conferences with the Court, these events alone cannot explain the inordinate number of hours contributed to standard letter motions, legal research, and supporting memoranda, nor can it explain why three attorneys' time was necessary. (Doc. Nos.

6

279-1, 281-1) Grobman's time records indicate that he alone spent 42.3 hours working on this dispute, listing two separate instances where approximately nine hours were spent on the same seven-page letter memorandum. (Doc. No. 281-1) DeYoung and Sharma together spent a comparable amount of time, 45.28 hours, largely preparing for the same conferences and drafting the same letters. (Doc. No. 279-1) An expenditure of $38,710.50 in attorneys' fees to address a spoliation issue is exorbitant.

Where an applicant's time is "not reasonably necessary to the outcome," the Court should "reduce the time for which compensation is awarded." *Tucker v. City of New York*, 2010 U.S. Dist. LEXIS 30270, *12-13 (S.D.N.Y. Mar. 9, 2010)(citing *Carey*, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983)). The Second Circuit has held that across-the-board percentage reductions are appropriate where a case is overstaffed, "resulting in needless duplication of work and retention of unnecessary personnel." *See Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009). Given the relative simplicity of the underlying dispute and the brief period during which this dispute was ongoing, a 20% across-the-board reduction in hours is fair and reasonable. Accordingly, the following hours will be applied towards the fee award: Grobman: 33.84; DeYoung: 16.48; Sharma: 19.74.

### 3. Adjusted Fee Award

Recalculated using the rates and reduction in hours described above, Mazzei's application for an award of attorneys' fees is granted in the amount of $30,681: Grobman is awarded $14,382, DeYoung is awarded $7,416, and Sharma is awarded $8,883.

## IV.  CONCLUSION

For the foregoing reasons, Mazzei's fee application is **GRANTED** in the amount of $30,681.

**SO ORDERED this 6th day of May 2015**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge