UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH MAZZEI, INDIVIDUALLY AND ON
BEHALF OF THE FEE-SPLIT CLASS,

01-cv-5694 (JGK)

                Plaintiffs,

<u>MEMORANDUM OPINION
AND ORDER</u>

    - against -

THE MONEY STORE, ET AL.,

              Defendants.

---

JOHN G. KOELTL, District Judge:

In 2001, Joseph Mazzei initiated a putative class action against The Money Store, TMS Mortgage Inc., and HomEq Servicing Corp. (collectively, the defendants), advancing claims relating to fees that the defendants, who were in the mortgage lending business, charged to their borrowers. One of the principal claims in the action was that the defendants had charged Mazzei and those similarly situated for purported "attorney's fees" in connection with their mortgages, when in reality those fees were allegedly being shared improperly with Fidelity National Foreclosure Solutions ("Fidelity"), the defendants' legal outsourcer, in violation of the defendants' contractual commitments. In January 2013, the Court certified a nationwide class of individuals who paid purported attorney's fees to the defendants that allegedly included amounts that were paid to Fidelity (the "Fee-Split Class"). Mazzei and the Fee-Split

1

Class's claims went to trial in December 2014 and the jury
returned a verdict on their fee-split claims in favor of the
defendants. That verdict was upheld following post-trial motions
before this Court and an appeal to the Court of Appeals for the
Second Circuit.

While this action was pending, the defendants made several
representations, and the Court issued several orders, relating
to the New Invoice System, a database that the plaintiffs
claimed contained data that were relevant to their fee-split
claims. Now, years after judgment was entered in this case, the
plaintiffs seek attorney's fees and expenses from the defendants
for the costs that the plaintiffs incurred while litigating
issues relating to the New Invoice System. The plaintiffs
contend that such an award is warranted under Federal Rule of
Civil Procedure 37(b) and the Court's inherent power in view of
newly discovered alleged misconduct by the defendants relating
to the New Invoice System. The defendants deny these allegations
and contend that because the plaintiffs' motion is baseless,
they are entitled to attorney's fees incurred in connection with
defending this motion pursuant to Rule 37(a). For the following
reasons, the plaintiffs' motion is **denied** and the defendants'
request for attorney's fees pursuant to Rule 37(a) is **denied.**

# I.

## A.

The Court assumes familiarity with the facts of this protracted case, which are recited in detail in the Court's Opinion and Order resolving the parties' post-trial motions. See Mazzei v. The Money Store, 308 F.R.D. 92 (S.D.N.Y. 2015) (the "Post-Trial Opinion").[1] In brief, in 1994, the named plaintiff, Joseph Mazzei, took out a mortgage loan from The Money Store. Id. at 94. After Mazzei defaulted on his loan, The Money Store charged him various fees, which Mazzei paid when he paid off the loan in full in October 2000. Id. Thereafter, Mazzei initiated this action alleging, among other things, that the defendants were not permitted to charge him certain fees pursuant to the contract that governed the mortgage. Id. Specifically, Mazzei claimed that the defendants charged Mazzei and similarly situated borrowers for purported "attorney's fees," which were in fact shared with Fidelity, a non-lawyer entity. Id. at 98-99.

In an Order dated January 28, 2013, the Court certified the Fee-Split Class, which was defined as follows:

> All similarly situated borrowers who signed form loan mortgage agreements on loans which were owned or serviced by the defendants and who from March 1, 2000 to the present ("Class Period") were charged . . . amounts

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

paid to Fidelity, a non-lawyer entity, from attorneys'
fees charged to borrowers.

ECF No. 187 at 1-2 (the "Certification Order"). The definition
of the Fee-Split Class was subsequently amended to exclude "any
borrowers who signed form loan mortgage agreements after
November 1, 2006." ECF No. 267 at 1.

The present motion relates to the defendants' litigation
conduct surrounding the New Invoice System, which purportedly
contained data relevant to the plaintiffs' claims. See Post-
Trial Opinion, 308 F.R.D. at 100. The Post-Trial Opinion
discussed the history of the proceedings relating to the New
Invoice System at length and explained that:

> The New Invoice System is the subject of a longstanding
> dispute. On or about May 5, 2009, the plaintiff moved
> for sanctions against the defendants for having failed
> to preserve and maintain records pertaining to the
> litigation from at least July 2002. The motion was based
> on [a HomEq employee's] deposition testimony, in which
> he testified that HomEq purged its accounting system
> annually of all loans that had been paid off. The
> defendants responded with a declaration of Hans Kobelt,
> then an attorney for the [] defendants, in which he swore
> that all of the defendants' records were being retained
> "in either the IT Turbo system, the New Invoice system,
> or Oracle, as well as hard copies and imaged loan
> documents from the loan files themselves." Based on this
> and other representations, the plaintiff withdrew his
> motion at the time.

Id. at 101. No further disputes arose regarding the New Invoice
System until February 2013.

4

**B.**

Following class certification in January 2013, the parties encountered difficulties identifying potential members of the Fee-Split Class. This resulted in a series of orders in early 2013 regarding class notices and methods for identifying potential class members:

- **The Certification Order:** "The Parties shall [produce] representatives with most relevant knowledge of the computer systems and databases from which the membership of the [Fee-Split Class] may be readily ascertained." Class Certification Order at 3;

- **A February 2013 conference order:** "I want the experts to meet and yes, I want the defendants to make whatever efforts can be made in terms of reasonably producing the documents that the experts can reasonably use for their meeting." ECF No. 197 at 32 (the "February 2013 Order");

- **A March 1, 2013 order:** "The defendants must make all reasonable efforts to produce the following documents prior to the meeting of their experts: . . . (2) any records of payments to Fidelity by borrowers and HomEq. The parties shall also discuss the best way to identify the members of the [Fee-Split Class]." ECF No. 193 at 1 (the "March 1, 2013 Order"); and

- **A March 9, 2013 order:** "The parties should provide the Court with letters as to the progress made toward identifying the members of the class for purposes of notice by March 28, 2013. Other than the Court has already ordered, the Court will not order the production of additional documents. The parties should make available any documents reasonably necessary to identify the [Fee-Split Class] and enter into any necessary confidentiality order. The Court declines to specify those documents because the Court does not want to specify documents that may or may not exist and that may or may not be able to be produced in a timely fashion. On the other hand, if documents are reasonably requested and not produced, then the parties will have to explain why they have not produced them." ECF

No. 199 (the "March 9, 2013 Order," together with the three prior orders, the "Class Identification Orders").

The issues relating to the creation of a class list were ultimately resolved and on June 2, 2014, the Court ordered that notices be sent to the class members on the plaintiffs' proposed class list. See ECF No. 267.

### C.

In February 2013, the plaintiffs served a document request on the defendants seeking, among other things, "[d]ocuments concerning any payments received by Fidelity in connection with loans referred by Defendants to Fidelity during the Class Period . . . ." ECF No. 544-3 at 6. In a discovery conference among the parties regarding this request, HomEq revealed that it had sold its mortgage servicing operation and all related assets, including the New Invoice System, to Barclays Real Estate Capital, Inc. ("Barclays") in 2006, and that consequently the defendants no longer had possession of the New Invoice System and the data contained therein. At a hearing regarding the New Invoice System, defense counsel represented that the defendants "have no information on whether any fees were split; if so, with whom or in what amounts. That is not information that was captured on the databases . . . ." ECF No. 544-4 at 10-11.

Following these disclosures, the plaintiffs served document subpoenas on Fidelity and its successors that sought documents

and data relating to the payments received by Fidelity. Among
the Fidelity entities subpoenaed, only Lender Processing
Services ("LPS") professed to have any responsive information.
In September 2013, LPS's counsel advised the plaintiffs that LPS
had data relating to "what may be approximately 300,000 [HomEq]
loans," including "invoices from law firms to HomEq and billing
records regarding services provided to the law firms by
Fidelity." ECF No. 544-8. However, LPS represented that the
information was inaccessible and that it did not know whether it
could be converted to a readable format. Id. LPS further
represented that it could take hours to extract readable
information for each of the 300,000 loans and LPS would charge
$85 per hour for "employee and computer time for the extraction
of information." Id.

In October 2013, the plaintiffs moved the Court for an
order compelling the defendants to determine whether the New
Invoice System data could be retrieved from LPS and to produce
that data. See ECF No. 544-10. In an Order dated July 21, 2014,
Magistrate Judge Ellis found that the defendants had a duty to
preserve the information hosted on the New Invoice System but
had failed to do so. Mazzei v. The Money Store, No. 01-cv-5694,
2014 WL 3610894, at *8 (S.D.N.Y. July 21, 2014) (the "July 2014
Order"). Magistrate Judge Ellis concluded that the defendants
should be "sanctioned for violating the duty to preserve

7

information in the New Invoice System" and ordered the
defendants to "1) bear the cost of determining whether the New
Invoice System data currently in possession of LPS is
searchable; [and] 2) pay Mazzei his attorneys' fees for this
application." Id.

The plaintiffs and the defendants both filed objections to
the July 2014 Order. The plaintiffs also moved for trial
sanctions against the defendants, seeking relief such as an
adverse inference or a default judgment on liability. In their
objections to the July 2014 Order, the defendants represented
that they (1) "never had access to information on the alleged
splitting of any fees;" and (2) had no "practical ability to
obtain the alleged fee-split information at Fidelity (or LPS)."
ECF No. 282 at 3, 11. The defendants and their counsel made the
following additional representations to the Court while the
parties' objections and the plaintiffs' motion for trial
sanctions were pending:

- "There's not going to be information in the New Invoice
  data system about fee splitting between the lawyers and the
  outsourcers," ECF No. 329 at 29;

- "The New Invoice System also did not contain records of
  payments . . . by law firms to Fidelity," ECF No. 306 ¶ 6;

- "No part of New Invoice was housed on The Money Store
  systems and the data fields or data entries could not be
  downloaded on The Money Store Systems," id. ¶ 3;

- "Nor did the New Invoice system contain records of payments
  by The Money Store to vendors such as Fidelity," id. ¶ 5;

- "I am informed that to utilize the data [in the New Invoice System], either the original New Invoice System would have to be resurrected or new software would have to be designed to read the data," ECF No. 305 ¶ 15.

Thereafter, as explained in the Post-Trial Opinion:

> On November 24, 2014, this Court held a final pretrial conference where it resolved all [outstanding] motions and objections. The Court affirmed Judge Ellis's opinion in all relevant parts, and denied the plaintiff's motion for additional sanctions [(the "November 2014 Order," ECF No. 436)]. The Court described the New Invoice System, noting that it was a "web-based system that was used to submit invoices to The Money Store by Fidelity and vendors such as law firms and trustee firms." The New Invoice System did "not contain records of bills submitted to law firms or payments made by the law firms for technology or administrative services fees." The Court held that although the defendants willfully failed to preserve the New Invoice System in the same accessible form that had previously existed, as Judge Ellis found, "there was no evidence of the defendants' bad faith in the sense that the defendants were intentionally depriving the plaintiff of information for use in this litigation." The Court noted that additional sanctions were inappropriate because the New Invoice System would not have shown actual payments to Fidelity or the lawyers or charges to the members of the plaintiff class.

Post-Trial Opinion, 308 F.R.D. at 101.

### D.

This case then proceeded to trial. Before trial, "the plaintiff obtained the records from the New Invoice System relating to Mazzei and introduced them at trial. . . . Despite access to the New Invoice documents relating to Mazzei, the jury returned a verdict in favor of the defendants on Mazzei's individual Fee Split claim." Post-Trial Opinion, 308 F.R.D. at 100. The plaintiffs then moved to set aside that verdict,

arguing in part that the Court erred by not sanctioning the
defendants with an adverse inference at trial. The Court denied
the plaintiffs' motion, reasoning:

> [A]s the Court explained several times during this
> litigation, the plaintiff's failures in proof are due
> principally to his lack of diligence in pursuing
> evidence. In the time since this Court was assigned to
> this case in the beginning of 2009, the plaintiff cannot
> point to any requests for discovery that were denied by
> this Court. Despite that fact, the plaintiff never
> deposed any corporate representatives of Fidelity or of
> [LPS], the successor entity that controlled the New
> Invoice System, nor did he ever seek any court orders
> for other databases mentioned by the defendants in the
> course of the 2009 sanctions motion. Moreover, the
> plaintiff never deposed a single lawyer who allegedly
> split fees with Fidelity, not even the lawyers who worked
> on Mazzei's account. In sum, there were no discernible
> efforts to seek evidence of fee splitting from any source
> other than the New Invoice System, a database that, as
> the Court has explained, only contained tangential
> information.
> . . .
> Despite rehashing the same spoliation arguments in this
> motion, the plaintiff has yet to offer a satisfactory
> explanation for his failures to pursue evidence
> diligently. The Magistrate Judge imposed an appropriate
> narrowly-tailored sanction for the defendants' failure
> to assure that the New Invoice System was retained in
> the same accessible form in which it had previously
> existed and this Court affirmed that sanction. The
> plaintiff failed to seek a greater sanction in his
> initial motion and this Court appropriately refused to
> grant a more severe sanction at trial in view of the
> tangential nature of the New Invoice System and the
> plaintiff's failure to pursue evidence diligently from
> alternative and more relevant sources.

Id. at 102.

The plaintiffs appealed this aspect of the Post-Trial
Opinion to the Court of Appeals for the Second Circuit, which

found the plaintiffs' arguments to be without merit and affirmed this Court's rulings. See Mazzei v. The Money Store, 656 F. App'x 558 (2d Cir. 2016).

## E.

Meanwhile, in March 2014, Lamar Bigsby initiated a putative class action against Barclays alleging, among other things, that Barclays charged its borrowers for purported attorney's fees that were split improperly with Fidelity. See Bigsby v. Barclays Capital Real Estate, Inc., No. 14-cv-1398 (S.D.N.Y., filed Mar. 3, 2014). In that action, Bigsby was represented by the same counsel that represents Mazzei and the Fee-Split Class in this action. During discovery in that action, two Fidelity and LPS successors — Black Knight Financial Services and ServiceLink Process Solutions (together, "Black Knight") — agreed to produce certain documents and to produce a witness for a deposition regarding Fidelity's relationship with the defendants in this action.

On April 10, 2019, Black Knight produced a document that it described as "list[ing] gross revenues received from Network Firms for Administrative Fees in connection with all loans serviced by Barclays/HomEq on Black Knight's software platform for each year from 2006 to 2010." ECF No. 544-14 at 2. The plaintiffs did not provide the Court or the defendants with a copy of this document in connection with the pending motion

11

because the document was designated as confidential under the protective order in the Bigsby action. On May 22, 2019, the plaintiffs' counsel deposed Caroline Bolen, a Vice President at Black Knight (the "Black Knight Deposition," ECF No. 544-16, together with the documents produced by Black Knight, the "Bigsby Evidence"). The plaintiffs provided the Court and the defendants with only the select excerpts from the Black Knight Deposition that were not marked as confidential under the protective order in the Bigsby action.

The plaintiffs submit that the evidence from the Bigsby action demonstrates that in May 2019, Black Knight had the "ready ability to extract data from the database used by [the defendants] to show each of the coded fees assessed on attorney invoices - including so-called 'administrative fees' paid to Fidelity." Motion at 18. This evidence, according to the plaintiffs, shows that the defendants and their counsel made false and misleading representations to this Court and violated this Court's orders relating to the New Invoice System. As a sanction for this alleged misconduct, pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority, the plaintiffs now seek attorney's fees and expenses caused by the defendants' alleged failure to comply with the Court's discovery orders. The defendants oppose the motion and, pursuant to

Federal Rule of Civil Procedure 37, seek attorney's fees incurred by the defendants in opposing the plaintiffs' motion.

**F.**

This is not the first time that the plaintiffs have sought sanctions against the defendants for alleged misconduct uncovered by the discovery developed in the Bigsby action. In 2020, the plaintiffs brought an action asserting claims under Federal Rules of Civil Procedure 60(d)(3) and 37 for fraud on the Court and failure to obey the Court's orders in this action. Judge Torres found the plaintiffs' claim arising under Rule 60(d)(3) to be without merit and dismissed their claim under Rule 37 without prejudice for lack of subject matter jurisdiction. See Mazzei v. The Money Store, No. 20-cv-307, 2020 WL 7774492 (S.D.N.Y. Dec. 30, 2020), reconsideration denied, 2021 WL 4429631 (S.D.N.Y. Sept. 27, 2021). Judge Torres concluded that the plaintiffs' allegations regarding the defendants' litigation conduct were either barred by res judicata or were insufficient to state a claim for fraud on the court. Id. at *5-8. An appeal of Judge Torres's decisions is pending before the Court of Appeals for the Second Circuit.

**II.**

As a preliminary matter, the defendants object to the plaintiffs' inclusion of Wells Fargo Bank, N.A. ("Wells Fargo") in the case caption on the plaintiffs' motion. The defendants

13

argue that because Wells Fargo is not a party to this lawsuit and has never been served with process, it should be stricken from the caption. The plaintiffs failed to respond to this argument in their reply brief and appear to have abandoned any claims against Wells Fargo. Accordingly, the defendants' request to have Wells Fargo stricken from the caption is granted.

### III.

Federal Rule of Civil Procedure 37(b)(2) provides that if a court finds that a failure to comply with an "order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)" has occurred, the Court may issue further just orders including striking pleadings. Instead of or in addition to such orders, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Additionally, "even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008). "The Supreme Court has cautioned that because of the very potency of a court's inherent power, it should be exercised with

restraint and discretion." <u>Lation v. Fetner Properties, Inc.</u>, No. 17-cv-3276, 2019 WL 1614691, at *2 (S.D.N.Y. Apr. 16, 2019). "An award of attorney's fees under the Court's inherent power requires a clear demonstration of bad faith in order to justify sanctions." <u>Id.</u>

The plaintiffs contend that the <u>Bigsby</u> Evidence demonstrates that the defendants violated this Court's orders by having concealed relevant discovery from the plaintiffs, making multiple misrepresentations to this Court, and generally acting in bad faith. The defendants deny these allegations and contend that even if the plaintiffs' interpretation of the <u>Bigsby</u> Evidence were accepted, it does not show that the defendants violated any court order or made any misrepresentation.

**A.**

The plaintiffs first contend that the <u>Bigsby</u> Evidence demonstrates that the defendants violated the July 2014 Order sanctioning the defendants and the November 2014 Order overruling the parties' objections to that order. Specifically, the plaintiffs argue that the <u>Bigsby</u> Evidence shows that the defendants "made no effort" to obtain the data from the New Invoice System and that this constituted a violation of the Court's orders. Motion at 21-22. This argument is without merit.

The July 2014 Order ordered the defendants to "1) bear the cost of determining whether the New Invoice System data

currently in the possession of LPS is searchable; [and] 2) pay Mazzei his attorneys' fees for this application." 2014 WL 3610894, at *8. On August 4, 2014, the plaintiffs applied for costs incurred in connection with their sanctions motion. See ECF No. 284. Magistrate Judge Ellis subsequently granted the application and it is undisputed that the defendants paid these costs. See ECF No. 506.

At the conference at which the Court issued the November 2014 Order, counsel for the plaintiffs explained that "subsequent to [the July 2014 Order,] we had taken upon ourselves to approach LPS and say, can you produce data at least for the named plaintiff . . . the data was[,] as LPS's attorney confirmed[,] not in any sort of readable form . . .. [O]ur understanding was that the communication from LPS indicated that the data was not in an accessible form." ECF No. 436 at 145-46. The Court observed that, in accordance with the July 2014 Order, the plaintiffs could apply for fees "with respect to the costs of determining whether the New Invoice system is [accessible]." Id. The plaintiffs never made a second application for fees. Moreover, the plaintiffs never argued that the defendants had violated the July 2014 and November 2014 Orders until they filed the present motion.

In sum, the plaintiffs determined through discussions with LPS's counsel that the New Invoice System data was not in an

16

accessible format. The plaintiffs informed the Court and the
defendants of their determination. The defendants then paid the
plaintiffs for any fees that the plaintiffs applied for. There
is therefore no basis on which to conclude that the defendants
violated the July or November 2014 Orders and nothing in the
Bigsby Evidence undermines this conclusion. If the plaintiffs
thought that the defendants were obligated to take more
proactive steps to determine whether the New Invoice System was
searchable, then the plaintiffs should have brought those
concerns to the Court's attention at the November 2014
conference, or at some other earlier point while this litigation
was still ongoing. Because the plaintiffs failed to do so, and
because the evidence from the Bigsby action provides no new
basis for finding that the defendants violated these orders, the
plaintiffs' motion pursuant to Rule 37(b) as to the July and
November 2014 Orders is denied.

**B.**

The plaintiffs next argue that the Bigsby Evidence shows
that the defendants violated the Class Identification Orders.
The Class Identification Orders generally ordered the defendants
to produce discovery to the plaintiffs that would enable the
parties to generate a list of Fee-Split Class members. In the
March 1, 2013 Order, the Court specifically ordered the

defendants to produce "any records of payments to Fidelity by borrowers and HomEq." March 1, 2013 Order at 1.

The plaintiffs' argument is barred by the law of the case doctrine. That "doctrine forecloses reconsideration of issues that were decided — or that could have been decided — during prior proceedings." Choi v. Tower Res. Capital LLC, 2 F.4th 10, 22 (2d Cir. 2021). Under this doctrine, courts "generally adhere to prior decisions in subsequent stages of the same case unless cogent compelling reasons militate otherwise." Id. "Cogent and compelling reasons justifying a departure from the law of the case may include an intervening change in law, availability of new evidence, or the need to correct clear error or prevent manifest injustice." Id.

The plaintiffs argue in the present motion that the defendants should be sanctioned because they violated the Class Identification Orders by failing to preserve and produce data from the New Invoice System. But the plaintiffs already advanced that argument in their 2014 motion for evidentiary sanctions, in which they also argued that that the defendants should be sanctioned for failing to preserve and produce data from the New Invoice System. See ECF No. 300. Indeed, in that motion, the plaintiffs quoted the same excerpt of the March 1, 2013 Order on which the plaintiffs now rely. See id. at 8 ("[A]fter plaintiff raised defendants' lack of cooperation in class discovery, the

Court entered an order directing the Defendants to produce 'any records of payments to Fidelity by borrowers and HomEq.' Defendants never produced such records.").

In the November 2014 Order, the Court resolved the plaintiffs' motion for evidentiary sanctions, concluding that the sanctions issued by Magistrate Judge Ellis were sufficient and that the plaintiffs were not entitled to additional relief. That determination was upheld on appeal. See Mazzei, 656 F. App'x at 559-60. Accordingly, the issue of what the appropriate sanction was for the defendants' failure to preserve and produce the New Invoice System data was put to rest years ago. The plaintiffs' present motion is an invitation to disturb the resolution of this issue and to sanction the defendants further for the same conduct. The plaintiffs have offered no persuasive reasons for doing so.

Any argument that the Bigsby Evidence provides a basis for revisiting these issues fails. Reopening a previously resolved issue that was decided and upheld on appeal requires "a showing of exceptional circumstances" such as a "proffer of significant new evidence, not earlier obtainable in the exercise of due diligence; or convinc[ing] the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC, No. 12-cv-8852, 2018 WL 922191, at *1

(S.D.N.Y. Feb. 15, 2018). In the Post-Trial Opinion, the Court explained that the plaintiffs' failure to obtain evidence relating to the New Invoice System was "due principally to [their] lack of diligence in pursuing [the] evidence." Post-Trial Opinion, 308 F.R.D. at 102; see also id. ("In sum, there were no discernible efforts to seek evidence of fee splitting from any source other than the New Invoice System, a database that, as the Court has explained, only contained tangential information."). Had the plaintiffs exercised proper diligence, they could have sought to depose an LPS/Black Knight representative during the discovery period in this action and obtained testimony regarding the topics covered in the Black Knight Deposition. Because they did not do so, the Bigsby Evidence cannot be used to disturb the Court's earlier rulings.

For these reasons, the plaintiffs' motion pursuant to Rule 37(b) as to the Class Identification Orders is denied.[2]

---

[2] The plaintiffs also mention the defendants' alleged misrepresentations in the portion of their brief discussing sanctions under Rule 37(b). Courts are empowered to issue sanctions pursuant to Rule 37(b) only if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(1). There is no provision in Rule 37(b) that empowers the Court to sanction a party for making a misrepresentation to the Court in the absence of a determination that the party also violated a discovery order. Accordingly, any stand-alone arguments that the Court should sanction the defendants pursuant to Rule 37(b) for having made alleged misrepresentations are without merit. In any event, as explained below, there is no basis for sanctions based on alleged misrepresentations in this case.

C.

The plaintiffs argue that irrespective of whether the defendants violated any Court order, the Court should sanction the defendants because the Bigsby Evidence demonstrates that the defendants made misrepresentations to the Court and generally acted in bad faith. For example, the plaintiffs contend that the Bigsby Evidence shows that the New Invoice System data contained relevant fee-split data and that these data "could have easily been produced by the Defendants." Motion at 25.

The defendants argue persuasively that the plaintiffs' arguments are premised at least in some part on a distorted interpretation of the Bigsby Evidence and its relevance to this case. First, there is no dispute that the Bigsby Evidence, including Ms. Bolen's testimony, concerned the time period of 2006 to 2010. Indeed, the proposed class in the Bigsby action was defined only to include borrowers whose loans were owned or were serviced by Barclays "from November 1, 2006 to present."[3] By contrast, the class that was certified in this case excluded "any borrowers who signed form loan mortgage agreements after November 1, 2006." ECF No. 267 at 1. The plaintiffs in the Bigsby action do not appear to have examined Ms. Bolen about

---

[3] Bigsby v. Barclays Capital Real Estate, Inc., No. 14-cv-1398, ECF Nos. 2, 104.

Black Knight's ability to access or produce data concerning the Fee-Split Class period.

Second, the thrust of Ms. Bolen's testimony is that as of May 2019, the Black Knight accounting department had the "tools" to use data from a system called Invoice Management[4] to generate the administrative fees billed to network firms in connection with the foreclosures of the homes of the named plaintiffs in the Bigsby action. Black Knight Deposition at 56-59, 65-66. Ms. Bolen further testified that she had the "capability today to look up or have someone look up a particular borrower to see all of the line item descriptions that appeared on invoices submitted through Invoice Management for that particular borrower." Id. at 188-89. Ms. Bolen testified that she did that for the named plaintiffs in the Bigsby action by making a request to the Black Knight accounting department and that it took them around a week to deliver the requested information to her. Id. at 59, 189. Black Knight also produced a document that listed gross revenues received from firms for administrative fees from 2006 to 2010. ECF No. 544-14.

This evidence does not demonstrate that the defendants acted in bad faith or engaged in newly uncovered sanctionable

---

[4] The plaintiffs represent that Invoice Management and the New Invoice System refer to the same database but do not point to any evidence in the Bigsby action that substantiates this contention.

conduct in this action. While this action was pending, it was well-established that with an investment of resources and time, it was possible that data from the New Invoice System could be reconstructed and extracted. See, e.g., ECF No. 303 at 5 (the defendants writing that "information from the New Invoice System is retrievable, although a complex task to do so."). Indeed, data relating to Mazzei's payments were reconstructed and introduced as evidence at the trial in this case. Post-Trial Opinion, 308 F.R.D. at 100. Ms. Bolen's testimony that as of 2019, she could request that the Black Knight accounting department retrieve certain data from Invoice Management and that her request would be fulfilled within a week or more is not necessarily inconsistent with the defendants' representations in this action. Notably, the plaintiffs have come forward with no evidence from the Bigsby action that sheds light on how the Black Knight accounting team went about generating these data for Ms. Bolen and the time and resources that went into fulfilling her requests. Moreover, the plaintiffs in this action were free to pursue with LPS any data from the New Invoice System and did so for Mazzei's loan.

In sum, the Bigsby Evidence does not establish that the defendants in this action could have easily obtained data from the New Invoice System or that defense counsel's representations about the availability of data relevant to this action were

23

false. Accordingly, the plaintiffs' argument that the Bigsby
Evidence demonstrates that the defendants acted in bad faith and
therefore engaged in newly discovered sanctionable conduct
fails.

Finally, irrespective of whether the plaintiffs' favored
interpretation of the Bigsby Evidence were accepted, the Court
would exercise its discretion and decline to impose sanctions.
As detailed in the Post-Trial Opinion, the plaintiffs in this
case failed to pursue diligently discovery from LPS/Black
Knight, and unlike the plaintiffs in Bigsby, never sought to
depose a representative of those entities. The plaintiffs in
this action ultimately did obtain evidence relating to Mazzei's
loan from the New Invoice System. But when they presented this
evidence at trial, the jury returned a verdict in favor of the
defendants on Mazzei's fee-split claim. This Court declined to
disturb the jury's verdict, explaining that there was "no basis
to believe that evidence from the New Invoice System would have
proved any claim with respect to the class." Post-Trial Opinion,
308 F.R.D. at 100. The plaintiffs have offered no persuasive
argument for how the Bigsby Evidence undermines this conclusion.
Accordingly, sanctions are not warranted for the additional
reason that the defendants' conduct with respect to the New
Invoice System did not affect materially Mazzei's and the Fee-
Split Class's ability to present their claims to the jury. See,

e.g., Yukos Capital S.A.R.L. v. Heldman, 977 F.3d 216, 235 (2d
Cir. 2020) ("In the discovery context," the Court's discretion
to impose sanctions under its inherent powers "should be
exercised with even more restraint than usual.").

## IV.

The defendants argue that pursuant to Rule 37(a), they
should be awarded attorney's fees incurred in connection with
defending this motion. Rule 37(a) provides that if a "motion for
an order compelling disclosure or discovery" is denied, the
court "must, after giving an opportunity to be heard, require
the movant . . . to pay the party[] who opposed the motion its
reasonable expenses incurred in opposing the motion, including
attorney's fees." Fed. R. Civ. P. 37 (a)(5)(B). However, "the
court must not order this payment if the motion was
substantially justified or other circumstances make an award of
expenses unjust." Id.

The defendants are not entitled to attorney's fees pursuant
to Rule 37(a)(5)(B). The attorney's fees provision of this
subsection of Rule 37(a) plainly applies to applications made
under Rule 37(a), namely, "motion[s] for an order compelling
disclosure or discovery." In this case, the plaintiffs moved for
an order for sanctions for the defendants' alleged "failure to
comply with a court order" pursuant to Rule 37(b). Unlike Rule
37(a), Rule 37(b) does not include a provision that contemplates

an award of attorney's fees to a party that defeats a Rule 37(b)
motion. Because the defendants rely on an inapposite subsection
of Rule 37 and have pointed to no rule or statute that entitles
them to attorney's fees for having defeated a Rule 37(b) motion,
the defendants' request for attorney's fees is denied. See,
e.g., McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins.
Co., No. 3:14-cv-2498, 2016 WL 4013670, at *4 (N.D. Tex. July
27, 2016) (denying a similar request for fees and expenses from
a party that defeated a Rule 37(b) motion and explaining that
unlike Rule 37(a)(5)(B), "Rule 37(b) contains no such 'loser
pays' fee-shifting provision.").

CONCLUSION

The Court has considered all of the arguments of the
parties. To the extent not discussed above, the arguments are
either moot or without merit. For the foregoing reasons, the
plaintiffs' motion for attorney's fees and expenses is **denied.**
The defendants' motion for attorney's fees and expenses is also
**denied.** The Clerk is directed to close all pending motions.

SO ORDERED.

Dated:      New York, New York
            June  9 , 2022

                                John G. Koeltl
                        United States District Judge